```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION

Samantha J. Moore,              :

        Plaintiff,              :

    v.                          :   Case No. 2:14-cv-1244

Commissioner of Social Security,    JUDGE EDMUND A. SARGUS, JR.
                                :   Magistrate Judge Kemp

        Defendant.              :
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Samantha J. Moore, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Those applications were filed on December 1, 2011, and alleged that Plaintiff became disabled on March 12, 2010.

After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on February 20, 2013. In a decision dated March 22, 2013, the ALJ denied benefits. That became the Commissioner's final decision on June 30, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on November 4, 2014. Plaintiff filed her statement of specific errors on December 4, 2014, to which the Commissioner responded on February 4, 2015. Plaintiff filed a reply brief on February 16, 2015, and the case is now ready to decide.

II. The Lay Testimony at the Administrative Hearing

Plaintiff, who was 45 years old at the time of the administrative hearing and who has a high school education,

testified as follows.  Her testimony appears at pages 48-69 of the administrative record.

Plaintiff said that she last worked sometime in 2010.  She attempted to go back to work in 2011 but that attempt was not successful.  She was fired after two months for missing work due to illness.  In particular, she testified that her anxiety causes her to become ill when she is around other people.  She also described problems with her left shoulder and right wrist due to tendonitis.  She was limited in her ability to lift and carry objects with her right hand and could not pick up small objects.  She also used inhalers on a daily basis, and experienced some dizziness and fatigue.

When asked about her physical capabilities, Plaintiff said she could lift only five pounds and could not stand for more than ten minutes before she would need a break.  She could walk for ten to fifteen minutes and could sit for half an hour before needing to change positions.  She had to lie down three or four times per day.  She also needed help occasionally with showering and dressing.  Plaintiff was also seeing a counselor or psychiatrist for mental health issues.  She said that her memory and concentration were affected and she had a short attention span.

On an average day, Plaintiff watched television and attempted to do some housework.  She might crochet as well.  Much of her time was spent in bed.  She had given up many outdoor activities such as hiking and cycling.

### III. The Medical Records

The medical records in this case are found beginning on page 310 of the administrative record.  The pertinent records - those relating to Plaintiff's single statement of error, which relates to her psychological conditions - can be summarized as follows.

The records which the ALJ had before him in considering

Plaintiff's anxiety and depression are these.  First, there were some notes made by her family physician about mental health complaints and treatment.  They include a brief note which says "Depression/Anxiety" on a Family Healthcare, Inc. chart describing Plaintiff's October 21, 2009 visit (Tr. 467); a similar note for the May 21, 2010 visit, followed by a notation that these conditions were controlled by medication (Tr. 464); a note on September 9, 2011 showing a prescription of Prozac (Tr. 457); a change in medication on October 17, 2011 (Tr. 455); and a listing of depressive disorder symptoms which Plaintiff was experiencing (Tr. 453).  This last note, made on November 9, 2011, also states that Plaintiff had a poor experience with counseling in the past and had been on four different antidepressants, all of which she had stopped once she felt better.  There are also some notes from Lue-Anne Bennett, a social worker, from 2012 documenting some psychological symptoms. (Tr. 574-75).

Second, a psychological evaluation was done by Charles Loomis.  Plaintiff said that her most serious conditions were her nerves and breathing problems.  She described a history of alcohol use up until five months before the date of the evaluation, which occurred on March 13, 2012.  She was in counseling at that time and was also taking medications to manage psychological symptoms.  Mr. Loomis observed that Plaintiff's affect was constricted and her mood was depressed.  Her concentration and memory were below average.  The diagnoses included an anxiety disorder and her GAF was rated at 54.  Mr. Loomis thought she could follow simple and moderately complex instructions, had below average ability to maintain attention and concentration, did not have any limitations in responding to the social expectations which were present at work, and had some limitations dealing with work stress due to anxiety, depression,

and "her perception of her physical limitations." (Tr. 481-87).

Lastly, the ALJ had before him opinions from state agency reviewers. Dr. Hoyle determined that Plaintiff's anxiety disorder and affective disorder imposed only mild limitations on Plaintiff's activities of daily living, social functioning, and maintaining concentration, persistence and pace. (Tr. 93). Dr. Warren concurred. (Tr. 118). Both had the benefit of the treatment notes and also Mr. Loomis' evaluation report. The ALJ used these sources in deciding that Plaintiff did not have any severe mental impairments. (Tr. 31-32).

There was additional evidence on this issue submitted to the Appeals Council. It consists primarily of a letter from a licensed independent social worker, Mr. Barnett, co-signed by Dr. Gottfried, Plaintiff's family physician, which states that Plaintiff suffers from major depressive disorder, posttraumatic stress disorder, and panic disorder; that she had symptoms which made "coping with the demands of working impossible"; and which, according to a mental residual functional capacity assessment form attached to the letter, caused marked to extreme limitations in almost every area of work-related functioning. (Tr. 626-39). The letter and form are dated May 16, 2013, which is about two months after the date of the ALJ's decision.

### IV. The Vocational Testimony

Dr. Jeffrey Magrowski was the vocational expert in this case. His testimony begins at page 70 of the administrative record.

Dr. Magrowski was asked to categorize Plaintiff's past work. He identified her jobs as waitress, which was light and semi-skilled, and housekeeper, which was medium as Plaintiff performed it, but usually done at the light exertional level. That job was unskilled. Other jobs included restaurant manager (skilled, and heavy as Plaintiff performed it, but usually light); stocker

(medium and unskilled); and kitchen helper (also medium and unskilled).

Dr. Magrowski was then asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level but who had to avoid more than occasional exposure to temperature extremes and to fumes, odors, dust, gases, and poorly ventilated areas.  Dr. Magrowski said that such a person could do some of Plaintiff's past jobs including housekeeper, waitress, and restaurant manager.

Dr. Magrowski was next asked about someone who had the same environmental limitations as described in the first hypothetical, but who was limited to sedentary work.  Such a person could not, he said, do any of Plaintiff's past work, but the person could be an appointment clerk, order clerk, or telephone answering service operator.  He gave numbers for those jobs in both the State and national economies.

Next, mental limitations were added to the hypothetical question which assumed a restriction to light work.  Those included the ability to deal with only simple tasks and instructions, to sustain concentration for only two hours at a time, to interact occasionally with others, and to respond appropriately to workplace changes.  Those additional limitations would not, according to Dr. Magrowski, preclude someone from doing the housekeeper job or from working as a bagger of clothing or garments, a bench assembler, or an office helper.  Finally, if the exertional level were changed to sedentary, the person could do jobs like surveillance system monitor, table worker, and document preparer.  There were about 800 such jobs in Ohio, and about 22,200 in the national economy.  Finally, he testified that a person who had additional restrictions including the need to take long unscheduled breaks, to miss one day of work per week,

and to interact with the public only rarely, could not work.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 27-38 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2013. Next, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 12, 2010. Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including a history of lung cancer with lobectomy, chronic obstructive pulmonary disease, and obesity. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level except that she could not tolerate more than occasional exposure to temperature extremes, dusts, fumes, gases, odors, and poor ventilation. The ALJ next concluded that, given this residual functional capacity, Plaintiff could not do her past relevant work, but she could do certain jobs identified by the vocational expert, including appointment clerk, order clerk, and telephone answering service operator. The ALJ further found that such jobs existed in significant numbers in the State and national economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

### VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises a single issue. She asserts that the Appeals Council erred by

failing to consider new and material evidence that related to the period before the date of the ALJ's decision.  The Commissioner responds that the Appeals Council's decision clearly states that the evidence was considered.  Plaintiff's reply takes issue with that statement and also argues that the Appeals Council's articulation of its reasoning for concluding that the new evidence did not affect the correctness of the ALJ's decision was insufficient.

The Court begins by noting that Plaintiff has not formally requested a sentence six remand either in her statement of errors or in her reply.  As the Court construes her argument, it raises only a procedural issue relating to the Appeals Council's review of the evidence submitted after the ALJ's decision.  The Appeals Council, in its denial letter, said this:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We considered whether the Administrative law Judge's action, findings, or conclusion is contrary to the weight of the evidence of record.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

Tr. 1-2.  The evidence to which the Appeals Council referred included the letter and form submitted by Ms. Barnett and the brief filed on Plaintiff's behalf on August 23, 2013.  That brief (Tr. 308-09) specifically argued, among other things, that "Ms. Moore's therapist, Lue-Anne Barnett LISW-S, submitted a functional evaluation following the hearing indicating based on her treatment of Ms. Moore that she had marked to extreme limitations in all functional domains" and that "[i]t was error for the ALJ not to include at least some functional limitations related to ms. Moore's psychological impairments in her residual functional capacity."  Plaintiff asserts that, notwithstanding the Appeals Council's specific references to the new evidence and to her arguments concerning the significance of that evidence,

the Appeals Council's decision is procedurally inadequate because it made "no attempt to address [the] critical question" of "whether the new evidence from Ms. Barnett related to the period at issue" - something required by 20 C.F.R. §404.970(b). This failure to articulate was, according to Plaintiff, "so deficient as to render the regulatory protections offered [in that section] illusory." Statement of Errors, Doc. 9, at 6-7. She argues, in addition, that the apparent failure to consider this "other source" evidence violated SSR 06-03p. Her major issue with the Appeals Council's decision, as summarized in her reply brief, is that the Appeals Council "committed reversible error by issuing a final decision which refused to fulfill the clear procedural duty outlined in the Ruling and regulations." Reply Memorandum, Doc. 13, at 3.

Plaintiff's briefs cite no authority for the proposition that the Appeals Council is required to articulate, in any specific way, the reasons for its decision or the fact that it understood and followed the regulations which apply to its review of an ALJ's determination. The case law appears to be somewhat conflicting on this issue. See, e.g., Scott ex rel. Scott v. Barnhart, 332 F.Supp.2d 869, 877 (D. Md. 2004)("There is a difference of opinion among courts as to whether or not the Appeals Council must articulate its assessment of new evidence"). That court cited to decisions from the Seventh and Eighth Circuit Courts of Appeals as favoring the rule that no articulation is needed, and to three district court cases - including an earlier case from the District of Maryland - holding the opposite. Since that case was decided, other Courts of Appeals have joined the list of courts which do not recognize an articulation requirement. See, e.g., Burgin v. Comm'r of Social Security, 420 Fed. Appx. 901, 903 (11th Cir. March 30, 2011); Meyer v. Astrue, 662 F.3d 700, 705-06 (4th Cir. 2011)("the regulations do not require the Appeals Council to articulate its rationale for denying a request for review"). This latter case would seem to overrule both Scott and the other district court decisions within

the Fourth Circuit on which Scott relied. There do not appear to be any pertinent decisions from courts within the Sixth Circuit.

Here, despite the fact that the Appeals Council acknowledged that Plaintiff had submitted new evidence, and that it also referred to a brief filed on Plaintiff's behalf citing to that evidence, Plaintiff asks the Court to presume, based on a lack of articulation, that the Appeals Council did not follow the applicable regulatory scheme for evaluating that evidence. There is nothing in the record suggesting this to be true. There are some regulations which, due to their special consideration of the interests of claimants or the Court in having a basis for review, do carry with them an articulation requirement - §404.1527(c) is one of them, see Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004) - but the Court of Appeals has been reluctant to read that requirement into other social security regulations. See, e.g., Rabbers v. Comm'r of Social Security, 582 F.3d 647 (6th cir. 2009). The Court sees no reason to make an exception here to the general rule that, absent some evidence to the contrary, an agency is presumed to have followed proper procedures even if it does not provide a detailed explanation of its actions. Because the failure to provide that explanation is the only basis on which Plaintiff has asked for reversal or remand, the Court will therefore recommend that her statement of errors be overruled.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner of Social Security.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge